2021 IL App (3d) 180549

Opinion filed January 29, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0549 Circuit No. 18-CF-526 |
| | ) | |
| JOHN W. RICE, | ) ) | Honorable Daniel L. Kennedy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Presiding Justice McDade and Justice Lytton concurred in the judgment and opinion.

**OPINION**

¶ 1        An officer of the Bolingbrook Police Department stopped defendant's vehicle after witnessing the vehicle change lanes while traveling through an intersection. The officer believed the maneuver violated what is commonly known as the improper lane usage statute. See 625 ILCS 5/11-709 (West 2018). The lower court found that although the statute did not prohibit executing a lane change in an intersection, the officer's mistake of law was objectively reasonable. For the reasons that follow, we reverse the lower court's judgment, vacate defendant's convictions, and remand for further proceedings.

## I. BACKGROUND

### A. Traffic Stop

It was late on the evening of March 13, 2018, with a spit of rain falling from the sky. Officer Marjory Higgens of the Bolingbrook Police Department had been an officer for nine years and was on patrol that night. Higgens was traveling northbound on Route 53, locally known as Bolingbrook Drive. The roadway is three lanes wide; Higgens was in the far-right lane. She approached a well-lit intersection controlled by a stoplight. Just beyond this intersection is another intersection controlled by a stoplight. At the second intersection, the roadway expands to five lanes, with the two lanes farthest to the left for left-hand turns onto the I-55 South on-ramp. Higgens came to a stop at the initial intersection as the stoplight was red. In front of her were three vehicles, one in each lane of the northbound road. All three of the vehicles were heading straight.

When the light turned green, two of the three vehicles proceeded through the intersection while the center vehicle located to Higgens' left hesitated. The hesitation was momentary but caught her attention. The hesitating vehicle was a maroon Ford Focus. Once the traffic on either side of the Focus passed, the driver of the vehicle initiated the left turn signal and began to proceed through the intersection while changing lanes. Once through the intersection, the vehicle made two more lane changes until it was traveling in the farthest left turn lane for the I-55 South on-ramp. In total, the Focus traveled across three lanes. Higgens followed the Focus and situated herself behind the vehicle. Once the Focus exited the initial intersection, it came to rest momentarily in the far-left turn lane of the second intersection as the light was red. After a brief pause, the light turned green and traffic began to turn left onto the on-ramp. Before the Focus entered the on-ramp for the interstate, Higgens activated her overhead lights on her squad car and initiated a traffic

stop. She believed the lane change while traveling through the intersection violated the improper lane usage statute (*id*.). The Focus immediately pulled off to the right-hand side of the on-ramp.

¶ 6     Higgens made contact with the driver of the Focus, defendant John W. Rice. Defendant immediately admitted he should not have been driving. While talking to defendant, Higgens noticed signs of intoxication. A run of defendant through the Law Enforcement Agency Data System showed that he was driving on a suspended license. Defendant also failed field sobriety tests. Higgens arrested defendant. The State charged him with aggravated driving under the influence (*id.* § 11-501(a)(2), (d)(1)(G), (d)(2)(D)) and aggravated driving while license suspended (*id.* § 6-303(d-3)(1), (2)).

¶ 7                                    B. Motion to Suppress

¶ 8     Prior to trial, defendant filed a "motion to quash arrest and suppress evidence"[1] pursuant to sections 114-11 and 114-12 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-11, 114-12 (West 2018)). Defendant alleged there was no reasonable and articulable basis for Higgens to stop his vehicle. Specifically, defendant argued there was no "observations of criminal activity" prior to the stop.

¶ 9     The lower court held a hearing on the motion. Defendant called Higgens to testify. She testified to the series of events as explained above. In addition, she stated that based on her training and experience, she thought that when defendant changed lanes while traveling through the intersection, he had violated the improper lane usage statute. Defendant did not obstruct other traffic when making the lane change in the intersection, and the additional lane changes made

---

[1]A "motion to quash arrest" is not a cognizable motion referenced in the Code of Criminal Procedure of 1963 nor is the quashing of an arrest a judicial remedy contemplated anywhere in the Code. See *People v. Ramirez*, 2013 IL App (4th) 121153, ¶¶ 56-61. In this case, the language "quash arrest" was harmless surplusage in the title of a motion to suppress evidence.

outside of the intersection were done in a safe manner. If the same situation were to occur again, Higgens would not issue a ticket for a violation of the improper lane usage statute.

¶ 10　　　The entire event was recorded by the dash camera in her squad car. The trial court and Higgens both watched the video in open court.

¶ 11　　　On redirect, the prosecution asked if Higgens issued the ticket for a safety violation under the improper lane usage statute based on time of day, amount of traffic present, and the number of lane changes. Higgens simply replied yes. Higgens was the only witness called to the stand.

¶ 12　　　The parties reserved arguments for a later date, in the interim submitting caselaw regarding a reasonable mistake of law. When the hearing reconvened, the court heard arguments. Defendant argued that for the exception encompassed under a reasonable mistake of law to apply, Higgens had to be interpreting an ambiguous statute. The State argued the subjective interpretation of Higgens was objectively reasonable. The court stated that while not necessarily agreeing with the caselaw on the topic, it was denying defendant's motion and the matter was going to proceed to trial.

¶ 13　　　　　　　　　　　　　C. Stipulated Bench Trial

¶ 14　　　Defendant waived his right to a jury trial. The State nol-prossed the improper lane usage citation. A stipulated bench trial ensued, which included Higgens' testimony from the suppression hearing, the squad car dashcam video, a redacted police report of the incident, and defendant's driving abstract indicating his license was suspended on the date of the arrest. The court found defendant guilty. His criminal history made him eligible for Class X sentencing. The court imposed concurrent sentences of six and three years in prison. He did not file a posttrial motion.

¶ 15　　　Defendant now appeals the denial of his motion to suppress.

¶ 16　　　　　　　　　　　　　II. ANALYSIS

¶ 17 Defendant argues the lower court erred in denying the motion to suppress because he did not commit the offense of improper lane usage. As such, Higgens "mistaken belief to the contrary was objectively unreasonable." Further, she lacked a reasonable, articulable suspicion to stop his vehicle and conduct the investigation that led to his arrest. Moreover, defendant argues the mistake of law exception advocated by the State only applies when the statute relied upon as the basis for the stop is ambiguous. Defendant then directs this court's attention to a decision from the Second District finding the improper lane usage statute unambiguous. See *People v. Mueller*, 2018 IL App (2d) 170863.

¶ 18 The State asserts the lower court properly denied defendant's motion to suppress. It argues the stop of defendant's car was valid because the fourth amendment is not violated when the seizure is based on an objectively reasonable mistake of law. It argues the statute at issue is ambiguous. The State further argues that Higgens initiated the traffic stop not because she believed the defendant violated the improper lane usage statute by changing lanes in an intersection but because he failed to do so in a safe manner. The State goes on, attempting to persuade this court that *Mueller* was wrongly decided. In the alternative, the State argues that there is another sufficient basis to find the stop valid because defendant violated section 11-804(d) of the Illinois Vehicle Code by failing to signal a turn 100 feet before an intersection. 625 ILCS 5/11-804(d) (West 2018). The State then abandoned this assertion at oral arguments due to a recent decision by a panel of this court. See *People v. Kaczkowski*, 2020 IL App (3d) 170764, ¶ 16 (finding the State conflated the maneuvers of turning and changing lanes, attempting to apply the signaling distance required to turn right or left in section 804(d) to a lane change).

¶ 19 Initially, defendant acknowledges that he did not file a posttrial motion, which would ordinarily result in forfeiture of his claim on appeal. See *People v. Almond*, 2015 IL 113817, ¶ 54

(citing *People v. Enoch*, 122 Ill. 2d 176, 190 (1988)). Nonetheless, as defendant points out and the State acknowledges "constitutional issues that were previously raised at trial and could be raised later in a postconviction petition are *not* subject to forfeiture on direct appeal under *Enoch*." (Emphasis in original.) *Id.* The State nonetheless asserts "that it is arguable" that defendant has forfeited his arguments before this court. We disagree and thus proceed to analyze defendant's claim.

¶ 20        The fourth amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. *Elkins v. United States*, 364 U.S. 206, 213 (1960). It is well settled that stopping a vehicle and detaining its occupants constitutes a "seizure" within the meaning of the fourth amendment. *Brendlin v. California*, 551 U.S. 249, 255-56 (2007); *People v. Close*, 238 Ill. 2d 497, 504 (2010). The officer must have a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "If reasonable suspicion is lacking, the traffic stop is unconstitutional and any evidence that was obtained as a result of the stop is generally inadmissible." *People v. Bowden*, 2019 IL App (3d) 170654, ¶ 26 (citing *People v. Gaytan*, 2015 IL 116223, ¶ 20).

¶ 21        A mistake of law can support a reasonable and articulable suspicion that a criminal offense has occurred. *Gaytan*, 2015 IL 116223, ¶ 53. However, the mistake of law must be reasonable. The standard for reviewing the reasonableness of the mistake is an objective one, and courts " 'do not examine the subjective understanding of the particular officer involved.' " *Id.* ¶ 46 (quoting *Heien v. North Carolina*, 574 U.S. ___, ___, 135 S. Ct. 530, 539 (2014)). Instead, we review the statute involved that forms the basis of the mistake of law to determine whether it is ambiguous. *Heien*, 574 U.S. at ___, 135 S. Ct. at 541 (Kagan, J., concurring, joined by Ginsburg, J.) ("If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard

interpretive work, then the officer has made a reasonable mistake. But if not, not."). "[A]n officer commits an unreasonable mistake of law by misinterpreting an unambiguous statute." *Kaczkowski*, 2020 IL App (3d) 170764, ¶ 15 (citing *Gaytan*, 2015 IL 116223, ¶ 45).

¶ 22    The statute at issue here is section 11-709 of the Illinois Vehicle Code (625 ILCS 5/11-709 (West 2018)) and it provides in pertinent part:

> "Whenever any roadway has been divided into 2 or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply.
>
> (a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
>
> (b) Upon a roadway which is divided into 3 lanes and provides for two-way movement of traffic, a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle traveling in the same direction when such center lane is clear of traffic within a safe distance, or in preparation for making a left turn or where such center lane is at the time allocated exclusively to traffic moving in the same direction that the vehicle is proceeding and such allocation is designated by official traffic control devices."

¶ 23    After review, there is no prohibition against changing lanes while driving through an intersection contained within this statute. There is also no language that would cause confusion regarding the prohibition of lane changes within an intersection. The State concedes that after scouring the compiled statutes of this state, none criminalize such a maneuver. In light of the plain

language of the statute, we cannot say the officer's belief that the statute prohibited lane changes within an intersection was objectively reasonable.

¶ 24        The State argues the statute is ambiguous because of the discretion given to an officer in deciding whether a lane change is performed in a safe manner. We do not find this argument persuasive as the statute does not change upon an officer's subjective belief of what constitutes a safe lane change. Intertwined within this argument is the contention that Higgens issued the ticket for changing lanes unsafely. However, this argument is unsupported by Higgens' testimony or the video of the events taken from her squad car. Higgens stated that she would not issue the ticket for improper lane usage again faced with the same circumstances. Given that Higgens did not stop the vehicle for a safety violation of the improper lane usage statute, the assertions noted above concerning an ambiguity within the statute and the basis of the stop are without merit.

¶ 25        As an aside, Officer Higgens is to be commended for her honesty on the stand during the hearing on the motion to suppress. She was upfront regarding her mistake of law and did not waiver or attempt to provide an alternative ground for the stop when one did not exist. Her testimony makes clear that the mistake was subjectively honest and made in good faith.

¶ 26        Defendant requests that we adopt the finding of *Mueller*, 2018 IL App (2d) 170863, in which the Second District found the improper lane usage statute unambiguous. The State requests we declare that *Mueller* was wrongly decided. We need not do either. *Mueller*'s holding derived from facts distinct from this case and focused on language that appeared within the statute. Of course, here there is no language within the statute that deals with changing lanes within an intersection.

¶ 27    Accordingly, we find the officer's interpretation of the statute in these circumstances to be unreasonable. We reverse the lower court's ruling on the motion to suppress evidence, vacate defendant's convictions, and remand for further proceedings.

¶ 28                                  III. CONCLUSION

¶ 29    For the foregoing reasons, we reverse the judgment of the circuit court of Will County and vacate defendant's convictions.

¶ 30    Reversed and vacated.

¶ 31    Cause remanded.

**No. 3-18-0549**

| | |
|---|---|
| **Cite as:** | *People v. Rice*, 2021 IL App (3d) 180549 |
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 18-CF-526; the Hon. Daniel L. Kennedy, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, Douglas R. Hoff, and Katherine M. Donahoe, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Thomas D. Arado, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |